UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/14/2020

MARCUS AYUSO,

                                        Plaintiff,

        -against-                                          18-CV-3419 (NSR)

SUPERINTENDENT THOMAS GRIFFIN, DR. R.                      OPINION & ORDER
BENTIVEGNA, CORRECTION OFFICER T.
SAWYER, and COMMISSIONER HEARING
OFFICER ERIC GUTWEIN,

                                        Defendants.

NELSON S. ROMÁN, United States District Judge:

        *Pro se* Plaintiff, Marcus Ayuso ("Plaintiff" or "Ayuso"), currently incarcerated at Otisville

Correctional Facility, commenced this action pursuant to 42 U.S.C. § 1983 against Superintendent

Thomas Griffin ("Griffin"),[1] Dr. R. Bentivegna ("Dr. Bentivegna"), Officer T. Sawyer ("CO

Sawyer") and Commissioner Hearing Officer Eric Gutwein ("Officer Gutwein") (together, the

"Defendants") on April 18, 2018. (*See* Complaint, ECF No. 2.)  In this action, Plaintiff alleges

claims sounding in the Eighth and Fourteenth Amendments to the United States Constitution.

Specifically, Plaintiff alleges that Defendants denied him due process in relation to an

administrative hearing and subjected him to cruel and unusual punishment in violation of his

Eighth Amendment rights.

        Before the Court is Defendants' Partial Motion to Dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* ECF No. 32.)  Defendants seek

dismissal of all claims with the exception of the alleged excessive force claim asserted against CO

---

[1] Defendants note that Griffin's title is now Assistant Commissioner.  (*See* Def. Mem. at 7.)

Sawyer.  (*See* Defendants' Mem. in Supp. of Motion to Dismiss ("Def. Mem."), ECF No. 33, at 8 n.8.)  For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual Allegations

The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

#### a.    The February 5, 2016 Altercation and Misbehavior Report

During February 2016, Plaintiff was an inmate at the Green Haven Correctional Facility in Stormville, New York ("Green Haven").  (*See* Complaint ("Compl.") at 2, 3 ¶ 1.)  Plaintiff alleges that on February 5, 2016, at approximately 1:00pm, he was in the second floor bathroom of Building 12 at Green Haven.  (*Id*. at 2.)  Another unnamed inmate, who was wearing a purple shirt and came from "Mrs. Connelly's classroom," was also present in the bathroom.  (*See id.* ¶ 16.)  CO Sawyer entered the bathroom and told the other inmate to leave, and the other inmate returned to the classroom.  (*See id.*)  CO Sawyer then directed Plaintiff to put his hands on the wall, and Plaintiff complied.  (*See id.*)  CO Sawyer proceeded to search Plaintiff, and then began hitting Plaintiff on the back of the head.  (*See id.*)  CO Sawyer continued to hit Plaintiff, and Plaintiff fell to the ground.  (*See id.*)  CO Sawyer also fell, and CO Sawyer's face hit the back of Plaintiff's head.  (*See id.*)  CO Sawyer continued to hit and kick Plaintiff's back and side.  (*See id.*)  Next, CO Sawyer placed Plaintiff in handcuffs.  (*See id.*)  CO Sawyer used his radio to call for more officers while continuing to kick Plaintiff.  (*See id.*)  Other officers arrived and transported Plaintiff to the Special Housing Unit ("SHU" – solitary confinement).  (*See id.*)

CO Sawyer issued Plaintiff an inmate misbehavior report related to the incident on February 5, 2016, which charged Plaintiff with violations of: 1) Rule 104.11 Violent Conduct; 2) Rule 104.13 Creating a Disturbance; 3) Rule 100.11 Assault on Staff; 4) Rule 107.10 Interference with Employee; 5) Rule 106.10 Refusing a Direct Order; and 6) Rule 101.20 Lewd Conduct. (*See id.* ¶ 1.)

### b. March 8, 2016 Disciplinary Proceeding

On February 10, 2016, Hearing Officer Gutwein was assigned to preside over the resulting Tier 3 disciplinary hearing. (*See id.* ¶ 2.) Plaintiff alleges that Officer Gutwein was not impartial during the disciplinary hearing. (*See id.* ¶ 8.) Plaintiff alleges that he was not given 24 hours to prepare for his hearing (*see id.* ¶ 12), and that Officer Gutwein postponed the disciplinary hearing three times without giving Plaintiff "proper notice of extension," extending the hearing 8 days past the 14 day limit. (*See id.* ¶¶ 2–3, 14.)

On February 26, 2016, a legal assistant visited Plaintiff, but did not have the "UI" (usual incident) report, the "investigation report," or a copy of the Building 12 logbook. (*See id.* ¶ 4.) The assistant had not spoken to any witnesses. (*See id.*) Plaintiff states that he was not permitted to call witnesses at the disciplinary hearing, including the unnamed inmate in the purple shirt whom he claims was present and a medical witness to describe the injuries he suffered. (*See id.* ¶ 13.) Specifically, Plaintiff alleges that he identified the inmate who wore the purple shirt to the assistant, but that the assistant replied that there was no other inmate in the bathroom at the time of the incident. (*See id.*) Plaintiff did not receive a denial form for both of the witnesses he requested, nor did he receive the documentary evidence that he requested. (*See id.*) Accordingly, Plaintiff refused to sign the assistant form. (*See id.*)

Plaintiff further alleges that the disciplinary hearing, held on March 8, 2016, was procedurally faulty. In particular, Plaintiff alleges that Officer Gutwein did not independently assess the reliability and/or creditability of CO Sawyer. (*See id.* ¶ 9.) Plaintiff contends that in the misbehavior report, CO Sawyer alleges that while making rounds he observed Plaintiff masturbating, which was the basis for the Rule 101.20 Lewd Conduct charge. (*See id.* ¶ 11.) By contrast, Plaintiff alleges that CO Sawyer later testified at the March 8, 2016 hearing that he did not actually see Plaintiff intentionally masturbating and/or exposing himself directly to CO Sawyer. (*See id.*)

At the conclusion of the hearing on March 8, 2016, Plaintiff was found guilty of all charges, and was sentenced to 270 days confinement in SHU and loss of all privileges, as well as the recommendation of loss of 9 months of good time credit. (*See id.* ¶ 4.)

### c. Administrative Appeal, Article 78 Proceedings, and Rehearing

That same day, on March 8, 2016, Plaintiff appealed the finding and sentence to the Department of Corrections and Community Supervision ("DOCCS") Director of Special Housing and Inmate Disciplinary Programs, Director Venettozzi. (*See id.* ¶ 5.) On May 9, 2016, the appeal was decided. (*See id.* ¶ 5.) Director Venettozzi dismissed the violations of Rule 101.20 Lewd Conduct and Rule 107.10 Interference with Employee, and modified Plaintiff's sentence to 120 days confinement in SHU and a loss of all privileges with a recommendation of loss of 6 months of good time credit. (*See id.* ¶ 6.) Sixty days of the sentence was suspended to November 5, 2016. (*See id.*)

Plaintiff then brought an Article 78 petition to challenge the disciplinary hearing in Albany County Supreme Court. *See Ayuso v. Venettozi*, Index No. 4291-16, Sup. Ct., Albany County (Jan. 31, 2017) (Weinstein, J.) (Decl. of Brendan M. Horan In Support of Motion to Dismiss ("Horan

Decl."), ECF No. 34, Ex. A). The court vacated the March 8, 2016 disciplinary hearing and remanded the matter for a new hearing, on the ground that a complete transcript of the hearing could not be prepared because the tape of the proceedings was of poor quality. (*Id.*)

A disciplinary rehearing was held by a different hearing officer, which concluded on February 28, 2017. (*See* Horan Decl. Ex. B.) Hearing Officer Gutwein was not involved in the second hearing. (*See generally id.*) At the second hearing, Plaintiff was again found guilty of violations of Rule 104.11 Violent Conduct, Rule 100.11 Assault on Staff, and Rule 106.10 Refusing a Direct Order. (*Id.*) Plaintiff was sentenced to 270 days confinement in SHU and loss of all privileges, as well as the recommendation of loss of 3 months of good time credit. (*Id.*) Plaintiff was given credit for his time already served in SHU. (*See id.*)

Plaintiff again challenged the determination via an Article 78 petition, but the petition was ultimately dismissed for lack of jurisdiction due to Plaintiff's failure to serve the Respondent with a copy of the executed order to show cause and petition. *Ayuso v. Rodriguez*, Index No. 4807-17, Sup. Ct., Albany County (November 20, 2017) (McGrath, J.) (Horan Decl. Ex. C.).

### d. Green Haven Grievance Procedure

Apart from the disciplinary proceedings and appeals, Plaintiff alleges that he filed a grievance with the Green Haven Correctional Facility regarding the "[a]lleged assault and use of force and hunger strike." (*See* Compl. at 15, item (e).) The grievance form lists "date filed" as March 22, 2016. (Plaintiff's Memorandum in Opposition ("Pl. Mem.") at 46, ECF No. 35.) [2] This grievance was denied on August 22, 2016, and Plaintiff appealed that decision "[t]o [t]he

---

[2] A court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). As Plaintiff explicitly referenced this grievance in the Complaint and relied upon it in bringing the suit, this Court may properly consider its contents at this juncture.

Superintendent in the Facility at Green Haven Correctional Facility," *i.e.,* Griffin, "and to the central office in Albany." (*See* Compl. at 15, item (e); Pl. Mem. at 46 (Plaintiff's grievance form containing a superintendent's signature and appeal statement).)

### e. Medical Evaluation and Treatment

Following the altercation on Friday, February 5, 2016, Plaintiff was examined by an unnamed nurse. (*See* Compl. ¶ 16.) Plaintiff informed the nurse that his right rib hurt and that he could not breathe. (*See id.*) Plaintiff requested transportation to a hospital outside of Green Haven, but the nurse refused, telling Plaintiff that he would be examined by a doctor on Monday.[3] (*See id.*)

Three days later, on Monday, February 8, 2016, Plaintiff was examined by Dr. Bentivegna. (*See id.*) Plaintiff showed Dr. Bentivegna bruises on his right shoulder, arm, and right rib. (*See id.*) Plaintiff again requested that he be taken to a hospital outside of Green Haven. Dr Bentivegna also refused to send Plaintiff to an outside hospital, but ordered an x-ray of Plaintiff's rib. (*See id.*) Plaintiff then told Dr. Bentivegna that he was experiencing "chronic and substantial pain" in his right rib and requested pain medication. In response to his continued complaints, Plaintiff claims that Dr. Bentivegna did not prescribe any pain medication. (*See id.*) Subsequently, on February 18, 2016, Plaintiff underwent an x-ray which revealed a "recent oblique fracture right 7th rib anteriorly in satisfactory position." (*Id*. ¶ 12).

On March 23, 2016, Plaintiff was sent to an outside hospital, Montefiore Mount Vernon Hospital, due to a hunger strike he undertook "because [CO] Sawyer set me up and use[d]

---

[3] In his opposition to the motion, Plaintiff states that there is a video recording that documents Plaintiff's interaction with the nurse on February 5, 2016. (*See* Pl. Mem. at ¶ 15.) Plaintiff asks the Court to request this tape. (*Id.*) As Defendants have not yet filed their Answer, and discovery is not yet underway, this discovery-related request is denied without prejudice to renew at a later stage of the proceedings.

excessive force and assaulted me." (*See id.* ¶ 18.)  X-rays there confirmed the diagnosis of a fractured rib.  (*See id.*)  Plaintiff was given pain medication "on that day only."  (*See id.*)

## LEGAL STANDARD

### I.          12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable.  *Iqbal*, 556 U.S. at 678.  To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

*Pro se* complaints are to be liberally construed.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief."  *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Plaintiff alleges that Officer Gutwein and Superintendent Griffin violated his Fourteenth Amendment due process rights with respect to the disciplinary hearing process. Plaintiff additionally alleges that CO Sawyer falsified the misbehavior report that instigated the disciplinary hearing. He also raises Eighth Amendment medical indifference claims against Superintendent Griffin and Dr. Bentivegna. For the reasons stated below, the Court finds Plaintiff's pleading to be insufficient as to some, but not all, of his claims.

## I. Due Process Claim Against Hearing Officer Gutwein

Plaintiff contends that he was not afforded proper process during his March 8, 2016 disciplinary proceeding before Hearing Officer Gutwein, after which he was placed in SHU

confinement in violation of his Fourteenth Amendment due process rights. Defendants maintain that Plaintiff has failed to adequately state a claim for due process violations. Specifically, Defendants argue that the March 8, 2016 hearing was vacated, a rehearing was held, and the entirety of Plaintiff's time served as a result of the March 8, 2016 hearing was applied to his sentence in the subsequent hearing. (*See* Def. Mem. at 15–18.) For the following reasons, this Court finds that Plaintiff has failed to state a due process claim.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire,* 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). But, even if a plaintiff succeeds in initially pleading a due process claim, such claim may nonetheless be dismissed, under certain conditions, if the due process violation was subsequently cured.

Defendants are correct that a disciplinary hearing that fails to meet the due process requirements of the constitution can be cured by a rehearing, as long as the prisoner did not suffer any penalty solely attributable to the defective hearing. *See Smart v. Gifford*, No. 15-CV-8939 (KMK), 2018 WL 401516, at *9 (S.D.N.Y. Jan. 12, 2018), *appeal dismissed*, No. 18-445, 2018 WL 3954203 (2d Cir. July 12, 2018) (collecting cases); *see also Horne v. Coughlin*, 155 F.3d 26, 31 (2d Cir. 1998), *adhered to on reh'g*, 178 F.3d 603 (2d Cir. 1999), *amended*, 191 F.3d 244 (2d Cir. 1999) (affirming dismissal of plaintiff's claims regarding a first hearing as they "became a nullity" because "[a]ll findings and penalties imposed at the first hearing were vacated, and all the penalties [plaintiff] suffered were imposed at the second hearing."); *Gaston v. Coughlin*, 249 F.3d

156, 164 (2d Cir. 2001) (affirming dismissal where "[Plaintiff's] confinement in SHU was entirely attributable to the ruling following the second hearing, given that the result of the first hearing was administratively overruled and that [Plaintiff's] sentence following the second hearing credited his prior time in SHU.").

Here, Plaintiff has already challenged the outcome of the March 8, 2016 hearing by filing an Article 78 petition. At the conclusion of that proceeding, Officer Gutwein's original disciplinary determination was vacated by the Albany County Supreme Court and remanded for a new hearing. *See Ayuso v. Venettozi*, Index No. 4291-16, Sup. Ct., Albany County (Jan. 31, 2017) (Weinstein, J.) (Horan Decl., ECF No. 34, Ex. A). Any alleged due process violations were in effect extinguished: At the first hearing, on March 8, 2016, Plaintiff was found guilty of all charges, and was sentenced to 270 days confinement in SHU and loss of all privileges, as well as the recommendation of loss of 9 months of good time credit. (See Compl. ¶ 4.) After the rehearing on February 28, 2017, Plaintiff was found guilty of three of the original five charges and sentenced to 270 days confinement in SHU and loss of all privileges, as well as the recommendation of loss of 3 months of good time credit. (*See* Horan Decl. Ex. B.) Plaintiff was given credit for his time already served in the SHU. (*See id.*) Therefore, Plaintiff did not ultimately sustain any penalty as a result of the first allegedly defective hearing before Officer Gutwein.

Plaintiff does not allege any due process claims with respect to the second hearing, and all the penalties that Plaintiff suffered are solely attributable to that second hearing. By virtue of pursuing the Article 78 proceeding in state court, Plaintiff obtained relief from the results of the first hearing, and he does not bring any due process challenges with respect to the second hearing. Accordingly, the result of the first hearing did not deprive Plaintiff of due process, and this claim must be dismissed with prejudice.

## II.    Due Process and Excessive Force Claims as to Superintendent Griffin

Defendants argue that the complaint should be dismissed as to Defendant Superintendent Griffin because Plaintiff fails to allege Griffin's personal involvement in any claim.    The Complaint names Superintendent Griffin in the caption and list of parties.  (*See* Compl. at 1, 2.)  It does not allege Griffin's involvement in any other aspect; indeed, it does not mention Griffin's name at all in the remainder of the document.  (*See generally id.*)  Construing the complaint liberally, as the Court must, there is one possible reference to Griffin in response to the following question: "[Q:] What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.  [A:] To [t]he Superintendent in the [f]acility at Green Haven Correctional Facility, and to central office in Albany."  (*See id.* at 15.)  Plaintiff's opposition briefing further clarifies that Plaintiff filed a grievance with Green Haven on March 22, 2016, but that Griffin failed to investigate "why I was on hunger strike and why [CO] Sawyer use[d] excessive force on me."  (*See* Pl. Mem. at 6, 46.)  Thus, Plaintiff's complaint may be read to implicate Superintendent Griffin in Plaintiff's due process and excessive force claims.

### a.    Due Process Claim

Even assuming that Plaintiff's due process rights were violated at the initial March 8, 2016 disciplinary proceeding, Plaintiff's claims against Superintendent Griffin fail for the same reason they fail against Officer Gutwein: any alleged defects were cured when Plaintiff was found guilty at a rehearing and credited for the time he had already served.  On the other hand, for Plaintiff's excessive force claim, which remains pending, the Court must examine whether Plaintiff has adequately alleged Griffin's involvement.

### b. Personal Involvement in Excessive Force Claim

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Courts in this Circuit, however, are "divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under § 1983" following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 07, 2017). The Second Circuit has not squarely addressed how *Iqbal*, which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," affects the standards in *Colon* for establishing liability. *Allah*, 2017 WL 3972517 at *6 (internal quotation marks and citations omitted); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test

set forth in *Colon v. Coughlin*.").  Overall, however, "[t]he majority of the district courts . . . have held that, absent any contrary directive for the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent."  *Allah*, 2017 WL 3972517 at *6 (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases).  This Court has already expressed its agreement with that proposition, and will apply it with equal force here.[4]

Because Plaintiff's excessive force claims do not require a showing of discriminatory intent, the Court will apply all five *Colon* factors.  *See Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (core judicial inquiry in excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.");  *Marom v. City of New York*, No. 15-CV-201 (PKC), 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), *partially reconsidered on separate grounds*, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016) (recognizing that, in areas outside of discrimination, *Iqbal* only "requires that a supervisor's action—whether direct or through 'his or her superintendent responsibilities'—must itself violate the terms of the constitutional provision at issue.").

Although Griffin occupied a supervisory role as Superintendent of the Green Haven facility, he did not have any direct personal involvement in the challenged conduct, *i.e.*, CO Sawyer's assault on Plaintiff.  Therefore, the Court must consider whether any of the other *Colon* factors are met, such that liability for Griffin in his individual capacity may be established.  Here, Plaintiff attempts to allege the personal involvement of Superintendent Griffin under the second *Colon* factor (*i.e.*, "the defendant, after being informed of the violation through a report or appeal,

---

[4] *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annuci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018); *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *5 (S.D.N.Y. Sept. 19, 2017).

failed to remedy the wrong"). *Colon*, 58 F.3d at 873. Plaintiff alleges that he submitted an official grievance to Griffin, which appeared to flag the alleged assault and excessive force used by CO Sawyer. (*See* Pl. Mem. at 46.)

Beyond putting Superintendent Griffin on notice of Plaintiff's grievances, the complaint does not allege that he had the ability to "remedy the wrong." The mere fact that Superintendent Griffin "affirmed the denial of plaintiff's grievance . . . is insufficient to establish personal involvement." *Riley v. Roycroft*, No. 16 CV 2227 (VB), 2017 WL 782917, at *4 (S.D.N.Y. Feb. 28, 2017) (quoting *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002)). This is because "an alleged constitutional violation complained of in a grievance must be 'ongoing' in order to find personal involvement such that the 'supervisory official who reviews the grievance can remedy it directly.'" *Riley*, 2017 WL 782917 at *4 (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009)).[5] Thus, when an Eighth Amendment violation is not ongoing, a supervisor will not be found to be personally involved on the sole basis of having received a grievance. *See Gibson v. Travis*, No. 14 CV 8764 (VB), 2016 WL 796865, at *3 (S.D.N.Y. Feb. 25, 2016) (finding supervisor not personally involved in conduct giving rise to excessive force claim, where plaintiff filed complaint the day after the assaults took place, and "[b]y that time, the alleged excessive force violation had 'concluded.'"); *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348–49 (S.D.N.Y. 2011) (finding no personal involvement where the Eighth Amendment constitutional violation "had concluded by the time [the superintendent] was called upon to review it.").

In this case, the alleged excessive force occurred on February 5, 2016. Plaintiff does not allege any facts to suggest any further excessive force claims that may have continued after that

---

[5] For example, in *Corbett v. Annucci*, the superintendent was found to be personally involved where he was informed of the underlying constitutional violation, which involved an ongoing issue: the continuing denial of Halal meals that conformed to the strict dietary requirements of plaintiff's religion. No. 16-CV-4492 (NSR), 2018 WL 919832, at *7 (S.D.N.Y. Feb. 13, 2018).

date.  Plaintiff's grievance was filed on March 22, 2016, well after the alleged violation occurred. For these reasons, the Court finds Plaintiff has not set forth sufficient facts to plausibly allege Superintendent Griffin's personal involvement in the deprivation of Plaintiff's constitutional rights.  Accordingly, Plaintiff's claims against Superintendent Griffin are dismissed with prejudice.

### III.    Claim that CO Sawyer Falsified Misbehavior Report

Plaintiff's complaint alleges that "[CO] Sawyer fabricated all alleged charges, and falsely wrote a misbehavior report with false allegations."  (Compl. ¶ 11.)  This allegation fails to state a claim, because "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).  "There must be more, such as retaliation against the prisoner for exercising a constitutional right."  *Id.*  As Plaintiff has not made out a plausible due process claim, and has not alleged any facts that could give rise to a retaliation claim as a result of the false misbehavior report, this claim must be dismissed with prejudice.  *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.").[6]

### IV.    Eighth Amendment Claim Against Dr. Bentivegna

Next, Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment.  (*See* Compl. ¶¶ 16, 18–19.)  Because Defendants have not moved to dismiss Plaintiff's excessive force claim against CO Sawyer, the Court will focus on Plaintiff's claim against Dr. Bentivegna regarding alleged deliberate indifference to his medical needs.

---

[6] The Second Circuit subsequently emphasized that this reasoning stands on the premise that "the prisoner's due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them."  *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995).  As discussed, Plaintiff has not alleged that the first hearing deprived Plaintiff of due process, given the subsequent rehearing that cured any potential defects.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1) an objectively serious medical need and (2) subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, "the defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). Further, the charged official must be aware that there is a substantial risk of harm. *Id.*

There are various limits to a deliberate indifference claim. First, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. In order for an action or an omission to be a constitutional violation, it must result in a "condition of urgency" that may result in "degeneration" or "extreme pain." *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Koehl*, 85 F.3d at 88 (holding the district court incorrectly dismissed the plaintiffs claim on a 12(b)(6) motion when a prisoner was deprived of his medically needed eye glasses resulting in a significant loss of vision); *Lowrance v. Coughlin*, 862 F. Supp 1090, 1116 (S.D.N.Y. 1994) (finding a plaintiff was deprived of medical care when his knee surgery was delayed due to various retaliatory prison transfers, causing pain and

suffering).  For example, if a prison official deliberately ignores a gash on a prisoner's face that is becoming infected, an omission of treatment could violate the Eighth Amendment, where the failure to provide cosmetic surgery when a prisoner nicks himself shaving would not.  *Chance*, 143 F.3d at 702.  An inadvertent failure to provide adequate medical care does not rise to the level of deliberate indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

### a.  Objectively Serious Medical Need

Plaintiff alleges that Defendant Dr. Bentivegna provided him inadequate medical treatment with respect to the injuries he sustained as a result of the alleged assault.  Read liberally, Plaintiff's complaint suggests that the inadequacies include Dr. Bentivegna's delay in care between the altercation on February 5, 2016, and the ultimate x-ray diagnosis on February 18, 2016, his decision not to prescribe pain medication, and his refusal to send Plaintiff to an outside hospital exacerbated his pain and suffering.

Defendants argue that Plaintiff's claims that he should have been transported to an outside hospital amount to a preference of treatment, rather than deprivation of care.  The Court agrees – a claim based a preference of treatment, absent any other harm, is not recoverable under the Eighth Amendment.  *See Munoz v. Eliezer*, No. 16-CV-6049 (NSR), 2018 WL 1626170, at *6 n.5 (S.D.N.Y. Mar. 30, 2018) (physician denied request to transfer to outside hospital and plaintiff later received x-ray diagnosis of a dislocated shoulder and three-to-four broken ribs); *Sereika v. Patel*, 411 F. Supp. 2d 397, 407–08 (S.D.N.Y. 2006) (plaintiff's allegation that he was not referred to a specialist was a "mere disagreement in treatment" and did not state a claim for deliberate indifference); *Rodriguez v. Westchester Cty. Jail Corr. Dep't*, No. 98 CIV. 2743(RPP), 2003 WL 1907963, at *6 (S.D.N.Y. Apr. 17, 2003) (Eighth Amendment claim regarding denial of referral to outside hospital "amounts at most to a disagreement over the proper course of treatment and

does not amount to 'deliberate indifference to serious medical needs.'"). As Plaintiff has not alleged any facts that would indicate that his medical needs could only be met adequately at an outside medical facility, the Court finds this aspect of his claim is not sufficiently pleaded.

By contrast, the delay in the treatment that Plaintiff received may rise to the level that would satisfy the objective prong of medical indifference. As the Second Circuit has instructed, "[w]hen the basis for a [deliberate indifference to serious medical need] claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim.'" *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003) (emphasis in original). The Eighth Amendment forbids "not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.' " *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998)).

Applying this standard to similar circumstances, the court in *Hunter v. City of New York* found that a plaintiff's pain resulting from a fractured rib rose to the level of a serious medical condition, where the plaintiff "was ultimately diagnosed with a fractured rib, complained of pain at the time of his arrest and at each subsequent clinic visit, did not receive any medical treatment until five days after his arrest and was prescribed narcotic pain medication when he was eventually

diagnosed with a fractured rib." 35 F. Supp. 3d 310, 320 (E.D.N.Y. 2014).[7]  The *Hunter* court reasoned that "the delay in providing him with medical care weighs in favor of finding that Plaintiff had an objectively serious medical condition, in light of the evidence that Plaintiff experienced persistent pain between the date of his arrest and the date the fractured rib was initially diagnosed." *Id.* at 319.

Here, Plaintiff did not undergo an x-ray evaluation until 13 days after he was injured.  (*See* Compl. ¶ 12).  He was also not given any pain medication until March 23, or 47 days after the injury occurred.  (*See id.* ¶ 18.)  As *Hunter* recognized, a fractured rib may cause the type of "extreme" or "chronic and substantial" pain that the Second Circuit has found to be "serious" for constitutional purposes.  *See* 35 F. Supp. 317–18 (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011 and *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).  Because Plaintiff alleges that he endured "chronic and substantial pain," (*see* Compl. ¶ 16), and given the circumstances surrounding the delay in his treatment and eventual diagnosis of a rib fracture and need for pain medication, the Court finds that an objectively serious medical need has been alleged.  *Compare Hunter,* 35 F. Supp. at 320, with *McMillon v. Davidson*, 873 F. Supp. 2d 512 (W.D. N.Y. 2012) (treatment of detainee's fractured rib did not amount to deliberate indifference to serious medical need, where delay in treating detainee had been relatively short, providers had examined detainee, prescribed him pain medication, and sent him to outside facility for x-ray and evaluation, and

---

[7] *See also Cook v. Artus*, No. 15-CV-00272A(F), 2019 WL 5698956, at *5 (W.D.N.Y. Mar. 26, 2019), *report and recommendation adopted sub nom. Cook v. Dunbar*, No. 15-CV-272-A, 2019 WL 5695820 (W.D.N.Y. Nov. 4, 2019) (finding "plaintiff's cracked ribs posed a sufficiently serious medical condition such that [defendant's] failure to treat it raises a question of fact with regard to the objective prong of his Eighth Amendment deliberate indifference test."); *McMillon v. Davidson*, 873 F. Supp. 2d 512, 514 (W.D.N.Y. 2012) (noting that "[s]evere pain can itself constitute a serious medical need for Eighth Amendment," and assuming that pain associated with a fractured rib presented a serious medical need); *Griffin v. Donelli*, No. 05–CV–1072, 2010 WL 681394, at *8 (N.D.N.Y. Feb. 24, 2010) (finding broken rib and head laceration sufficient to comprise a serious medical need) (citing *Torres v. N.Y.C. Dep't of Corr.*, No. 93–CV–6296, 1995 WL 63159, at *1 (S.D.N.Y. Feb. 15, 1995)).

providers had continued to administer prescribed over-the-counter pain relief to detainee upon his readmission to jail.).[8]

### b. Subjective Deliberate Indifference

Turning to the second element, "traditionally referred to . . . as the subjective prong," and better described as the "*mens rea* prong" or "mental element prong," *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017), the Court finds that Plaintiff has not adequately alleged that Defendant acted with a sufficiently culpable state of mind. The complaint alleges that, on February 8, 2016, Plaintiff showed Dr. Bentivegna bruises on the right side of his shoulder, arm, and right rib. (Compl. ¶ 16.). Plaintiff "kept complaining to Dr. Bentivegna concerning [his] pain and that [he] need[ed] pain medication and he [Dr. Bentivegna] told me no." (*Id.*). According to Plaintiff, Dr. Bentivegna instead told him, "[N]o I am going to send you for an x-ray." (*Id.*). Plaintiff's medical records from the February 18, 2016 x-ray corroborates this, listing an "Order" date of February 8, 2016, the same day that Dr. Bentivegna examined Plaintiff. (*See* Compl. at 49.) There are no other allegations regarding Dr. Bentivegna's treatment of Plaintiff.

Plaintiff has not alleged any facts from which an inference regarding Dr. Bentivegna's state of mind can be made, *see Jimenez*, 2017 WL 3268859, at *8 (finding no deliberate indifference for a six-day delay); *James v. Correct Care Sols.*, No. 13-CV-0019(NSR), 2013 WL 5730176, at *6–7 (S.D.N.Y. Oct, 21, 2013) (noting that deliberate indifference requires more than allegations about a delay in treatment), nor does he allege that the delay in treatment was intentional or

---

[8] The facts alleged here distinguish this case from *Munoz* and *Jimenez*, as they suggest that Plaintiff experienced more severe pain for a longer duration than that which was alleged in those cases. *See Munoz v. Eliezer*, No. 16-CV-6049 (NSR), 2018 WL 1626170, at *2 (S.D.N.Y. Mar. 30, 2018) (nine day delay in x-rays, where plaintiff complained of "pain to his chest and ribs and extreme difficulty breathing," but did not allege that he was denied pain medication or that his suffering prompted persistent complaints); *Jimenez v. Sommer*, No. 14-CV-5166 (NSR), 2017 WL 3268859, at *5 (S.D.N.Y. July 28, 2017) (six days passed between diagnosis and provision of a cast, but plaintiff received ibuprofen, vaccines for dizziness and back pain, x-rays, crutches, a wheelchair, an "air-cast," a fiber glass cast, and a "boot.").

reckless, *see Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (dismissal proper in absence of allegations that "the delay was either intentional or reckless"), or done to punish plaintiff, *see Crique v. Magill*, No. 12-CV-3345(PAC)(GWG), 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) (noting reservation of designation as deliberate indifference in Second Circuit to delays as "form of punishment" or where "life-threatening and fast-degenerating condition[s]" exist, etc.). Plaintiff has therefore failed to establish the subjective prong.

Accordingly, Plaintiff's Eighth Amendment claim against Dr. Bentivegna is dismissed without prejudice. *See Farmer*, 511 U.S. at 837 (requiring official to "know of and disregard[] an excessive risk to inmate health"). To the extent that Plaintiff can provide more factual allegations relating to Dr. Bentivegna's culpable state of mind with respect to Plaintiff's serious medical need, Plaintiff is granted leave to replead his claim. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain must be included in the amended complaint.

### c. Qualified Immunity Defense

Defendants argue in the alternative that Plaintiff's Eighth Amendment claim must be dismissed based on the defense of qualified immunity. Because the Court has dismissed the Eighth Amendment claim as insufficiently pleaded, it declines to address Dr. Bentivegna's qualified immunity defense at this juncture.

### CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's due process claims against Hearing Officer Gutwein and Superintendent Griffin are dismissed with prejudice. Plaintiff's claim against CO Sawyer regarding the misbehavior report is also dismissed with prejudice.

Plaintiff's Eighth Amendment excessive force claim is dismissed with prejudice as against Superintendent Griffin. Plaintiff's Eighth Amendment medical indifference claim against Dr. Bentivegna is dismissed without prejudice to renew. The Eighth Amendment claim against CO Sawyer remains.

Plaintiff may file an Amended Complaint consistent with this Opinion, on or before February 13, 2020, should he choose to reassert his Eighth Amendment claim against Dr. Bentivegna, which was dismissed without prejudice. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Order—must be included in the amended complaint.

Accordingly, the Clerk of the Court is respectfully directed to terminate Defendants' Partial Motion to Dismiss at ECF No. 32. If Plaintiff does not file an Amended Complaint by February 13, 2020, the remaining Defendant CO Sawyer is directed to file an answer as to the surviving claims of the original Complaint on or before March 16, 2020. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before April 6, 2020. The Clerk of the Court is directed to terminate Defendants Hearing Officer Gutwein, Superintendent Griffin, and Dr. Bentivegna. The Clerk of the Court is further directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

Dated: January 14, 2020
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-----------------------------------------------------------x

                                    Plaintiff(s),          **CIVIL CASE DISCOVERY PLAN**
                                                           **AND SCHEDULING ORDER**
            - against -


                                    Defendant(s).          _____ CV _____ (NSR)


-----------------------------------------------------------x

       This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.      All parties [consent] [do not consent] to conducting all further proceedings before a
        Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The
        parties are free to withhold consent without adverse substantive consequences.  (If
        all parties consent, the remaining paragraphs of this form need not be completed.)

2.      This case [is] [is not] to be tried to a jury.

3.      Joinder of additional parties must be accomplished by _____.

4.      Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses
        thereto shall be served within thirty (30) days thereafter.  The provisions of Local
        Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than

        _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not
            be held until all parties have responded to any first requests for production
            of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders,
            non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later
        than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

      _____

                                  _____

                                  Nelson S. Román, U.S. District Judge