USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/21/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCUS AYUSO,

                Plaintiff,

  -against-

DR. R. BENTIVEGNA, and CORRECTION OFFICER T. SAWYER,

                Defendants.

18 Civ. 3419 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

*Pro se* Plaintiff, Marcus Ayuso ("Plaintiff" or "Ayuso") commenced this action pursuant to 42 U.S.C. § 1983 against Dr. R. Bentivegna ("Dr. Bentivegna" or "Defendant") and Correction Officer T. Sawyer ("CO Sawyer")[1] on February 21, 2020. (ECF No. 40.) Plaintiff alleges that Defendants subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights.

Before the Court is Dr. Bentivegna's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim.[2] (ECF No. 49.) For the following reasons, Dr. Bentivegna's Motion is GRANTED.

## BACKGROUND

The following facts are derived from the Amended Complaint (ECF No. 40) and construed in the light most favorable to *pro se* Plaintiff for the purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). The

---

[1] The Original Complaint also named Superintendent Thomas Griffin and Commissioner Hearing Officer Eric Gutwein as Defendants (ECF No. 2), but the Court dismissed with prejudice all claims against these two Defendants (ECF No. 40).

[2] CO Sawyer did not move to dismiss the Amended Complaint. As such, this opinion does not address the sufficiency of the claims against CO Sawyer.

1

Court assumes familiarity with this matter and summarizes only those facts relevant to the instant motion; a more detailed factual recitation is available in the Court's prior opinion at ECF No. 38.

I. **Factual Allegations**

Plaintiff alleges that on Friday, February 5, 2016, while he was an inmate at the Green Haven Correctional Facility in Stormville, New York, he had an altercation with CO Sawyer during which, CO Sawyer hit Plaintiff on the back and head and, after Plaintiff fell to the ground, CO Sawyer continued to hit and kick Plaintiff's back and side. Later that day, Plaintiff was examined by an unnamed nurse who Plaintiff informed that his right rib hurt and that he could not breathe. Plaintiff requested transportation to a hospital outside of Green Haven, but the nurse refused, telling Plaintiff that he would be examined by a doctor on Monday.

Three days later, on Monday, February 8, 2016, Plaintiff was examined by Dr. Bentivegna. Plaintiff showed Dr. Bentivegna bruises on his right shoulder, arm, and rib. Plaintiff told Dr. Bentivegna that he was experiencing "chronic and substantial pain" in his right rib and requested pain medication. Dr. Bentivegna ordered an x-ray of Plaintiff's rib. Plaintiff again requested that he be taken to a hospital outside of Green Haven, but Dr. Bentivegna refused. Plaintiff alleges that Dr. Bentivegna had "actual knowledge" of the conditions that Plaintiff suffered from, including "stress" and "mental anguish," and that Plaintiff saw a psychiatrist five times a week because of these issues. (Amended Complaint at 6).

Plaintiff alleges in his Original Complaint and in the text of his Amended Complaint that Dr. Bentivegna did not prescribe any pain medication and only sent an order for Plaintiff to receive an x-ray. However, the medical reports Plaintiff attached to the Amended Complaint indicate that on February 8, 2016, in addition to ordering the x-ray, Dr. Bentivegna prescribed an NSAID pain

relief medication and a back brace. An x-ray taken February 18, 2016, revealed a "recent oblique fracture right 7th rib anteriorly in satisfactory position." (*Id.*)

On March 23, 2016, Plaintiff was sent to an outside hospital, Montefiore Mount Vernon Hospital, where x-rays confirmed the diagnosis of a fractured rib. Neither the Amended Complaint nor the medical records attached thereto indicate that the hospital provided any treatment beyond an NSAID. Plaintiff was also provided medication for management of high cholesterol and heartburn.

## II. Procedural History

On April 18, 2018, Plaintiff filed this action. (ECF No. 2). On May 30, 2019, Defendants filed a partial motion to dismiss. (ECF No. 32.) The Court dismissed with prejudice all of Plaintiff's claims against Superintendent Thomas Griffin and Commissioner Hearing Officer Eric Gutwein and the claim that CO Sawyer falsified a Misbehavior Report. (ECF No. 38.) The Court dismissed without prejudice the claims against Dr. Bentivegna. (ECF No. 38.)

Plaintiff filed an Amended Complaint on February 20, 2020, alleging Eighth Amendment claims against Dr. Bentivegna and CO Sawyer. (ECF No. 40.) Dr. Bentivegna's Motion to Dismiss the Amended Complaint, which Plaintiff opposed, is now before the Court.

## LEGAL STANDARDS

### I. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a

reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

The Court may also consider "documents attached to the complaint as exhibits" when reviewing a Motion to Dismiss for Failure to state a claim. *Difolco v. MSNBC Cable L.L.C*, 622 F.3d 104, 11 (2d. Cir. 2010). Further, the Court may rely on these documents as evidence of contradiction with the text of a complaint. *See, e.g.*, *Dean v. N.Y.C. Auth.*, 297 F. Supp. 2d 549, 554 (E.D.N.Y. 2004) (holding that although Plaintiff alleged that she "never received a right to sue letter, the letter attached to her complaint . . . established [that] she had knowledge of the . . . right to initiate a lawsuit).

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). Additionally, courts may "consider factual allegations made by a pro se party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

## II.     42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Plaintiff alleges that Dr. Bentivegna was deliberately indifferent to his serious medical needs in violation of the Eight Amendment.  Defendant avers that Plaintiff has failed to state a claim against him.  The court agrees with the Defendant.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under § 1983. *Estelle*, 429 U.S. at 103-05.  In order to state a claim for deliberate indifference to serious medical need, a prisoner must allege that he had: (1) an objectively serious medical need, and (2) that the defendant acted with the requisite culpable

state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The Court addresses each prong in turn.

I. **Objectively Serious Medical Need**

Plaintiff alleges that Dr. Bentivegna provided him with inadequate medical treatment with respect to the injuries he sustained as a result of the alleged assault. Defendant avers that Plaintiff has not stated an objectively serious medical need. The Court agrees with the Defendant.

The objective prong of a claim for medical indifference requires a "sufficiently serious" deprivation, meaning that the conditions alleged, "either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health." *Darnell v. Pineiro*, 849 F.3d 17, 30, 32 (2d Cir. 2017). When the offending conduct is failure to treat, a court examines "the severity of the prisoner's underlying medical condition;" however, if the allegedly offending conduct is delayed treatment, a court considers "the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). In other words, in a case where the offending conduct is delayed treatment, the court considers "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Harm is considered "sufficiently serious" if it could "produce death, degeneration, or extreme pain," *Hill v. Curcione*, 657 F3d. 116, 122 (2d Cir. 2011), or "the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain," *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

While Plaintiff alleges in the text of his Amended Complaint that he received no medication until March 23, 2016, the medical records Plaintiff attached to the Amended Complaint, indicate that on February 8, 2016, three days after the assault, Dr. Bentivegna approved

a back brace and prescribed an NSAID pain relief medication. By submitting these documents, which contradict the allegations in the Complaint, Plaintiff concedes that he did receive treatment. *See, e.g., Dean*, 297 F. Supp. 2d at 554 (holding that although Plaintiff alleged that she "never received a right to sue letter, the letter attached to her complaint… established [that] she had knowledge of the … right to initiate a lawsuit). Thus, the Court must consider whether the delay or inadequacy of care was sufficiently serious, not whether any underlying condition was sufficiently serious in and of itself.[3]

Plaintiff has failed to allege that any delay in care amounted to an objectively serious deprivation. While Plaintiff did not undergo an x-ray evaluation until thirteen days after he was injured, he started to receive pain relief medication only three days after the original injury. Plaintiff does not allege any inadequacy in his care that resulted in long-term side effects or further significant injury. Instead, his only claim regarding the inadequacy of his treatment is that he wanted to be seen outside of Green Haven sooner than he was. To the extent that Plaintiff claims that the refusal of the unnamed nurse or Dr. Bentivegna to transport him to a hospital, that claim amounts to a disagreement with or preference for specific treatment, rather than a constitutional violation. *See Rodriguez v. Westchester Cnty. Jail Corr. Dep't*, No. 98 CIV. 2743(RPP), 2003 WL 1907963, at *6 (S.D.N.Y. Apr. 17, 2003) (holding that a claim involving refusal to refer to outside hospital "amounts at most to a disagreement over the proper course of treatment and does not amount to 'deliberate indifference to serious medical needs'"); *see also Munoz v. Eliezer*, No. 16-CV-6049 (NSR), 2018 WL 1626170, at *6 n.5 (S.D.N.Y. Mar. 30, 2018) (addressing a claim

---

[3] While the Court analyzed the seriousness of the underlying condition in its first opinion, the additional allegations in the Amended Complaint and attachment thereto require analysis of the delay or inadequacy of care.

where physician denied request to transfer to outside hospital and plaintiff later received x-ray diagnosis of a dislocated shoulder and three-to-four broken ribs).

Moreover, Plaintiff admits that he ultimately was transported to a hospital, which confirmed the prior diagnosis and Plaintiff has not alleged that the hospital did or would have provided fundamentally different treatment than the treatment he received. Consequently, Plaintiff has not alleged an objectively serious deprivation. *See, e.g., Mcmillon v. Davidson*. 873 F. Supp. 2d 512 (W.D. N.Y. 2012) (holding that treatment of detainee's fractured rib did not amount to deliberate indifference to serious medical need where delay in treating detainee had been relatively short, providers had examined detainee, prescribed him pain medication, and sent him to outside facility for x-ray and evaluation, and providers had continued to administer prescribed over-the-counter pain relief to detainee upon his readmission to jail); *see also Munoz*, 2018 WL 1626170, at *2 (S.D.N.Y. Mar. 30, 2018) (dismissing claim based on nine day delay in x-rays, where plaintiff complained of "pain to his chest and ribs and extreme difficulty breathing," but did not allege that he was denied pain medication or that his suffering prompted persistent complaints); *Jimenez v. Sommer*, No. 14-CV-5166 (NSR), 2017 WL 3268859, at *5 (S.D.N.Y. July 28, 2017) (dismissing claim where six days passed between diagnosis and provision of a cast, but plaintiff received ibuprofen, vaccines for dizziness and back pain, x-rays, crutches, a wheelchair, an "air-cast," a fiber glass cast, and a "boot.").

II. **Subjective Deliberate Indifference**

Even if Plaintiff had satisfied the objective prong, his claim against Dr. Bentivegna would nonetheless need to be dismissed for failure to satisfy the subjective prong, which is better described as the "*mens rea* prong" or "mental element prong." *Darnell*, 849 F.3d at 32. The subjective standard is essentially criminal recklessness: the official must "know of and disregard

an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, "the defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere." *Salahuddin*, 467 F.3d at 281. Further, the charged official must be aware that there is a substantial risk of harm. *Id*; *see also Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986) (noting that the defendant must have actual notice of the prisoner's serious medical need). Moreover, "a mistaken decision not to treat based on a bad diagnosis or erroneous view that the condition is benign or trivial" constitutes only malpractice, *Harrison* 219 F.3d at 139, and medical malpractice is insufficient to satisfy the mens rea prong of a deliberate indifference claim. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence alone does not satisfy the standard).

Plaintiff alleges that on February 8, 2016, Plaintiff showed Dr. Bentivegna bruises on the right side of his shoulder, arm, and rib and told him about his chronic pain. None of these facts give rise to any inference regarding Dr. Bentivegna's state of mind, *see Jimenez*, 2017 WL 3268859, at *8 (holding that there is no deliberate indifference for a six-day delay); *James v. Correct Care Sols.*, No. 13-CV-0019(NSR), 2013 WL 5730176, at *6–7 (S.D.N.Y. Oct, 21, 2013) (noting that deliberate indifference requires more than allegations about a delay in treatment), nor does Plaintiff allege that the delay in treatment was intentional or reckless, *see Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (finding dismissal proper in absence of allegations that "the delay was either intentional or reckless"), or that treatment was withheld to punish plaintiff, *see Crique v. Magill*, No. 12-CV-3345(PAC)(GWG), 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) (noting reservation of designation as deliberate indifference in Second Circuit to delays as "form of punishment" or where "life-threatening and fast-degenerating condition[s]" exist, etc.).

9

While Plaintiff cursorily states that Dr. Bentivegna had "actual knowledge" of his "stress" and "mental anguish" and did not allow him to go to an outside hospital, these allegations are insufficient to meet the deliberate indifference standard. "Actual knowledge" of "stress" or "mental anguish" is too cursory to amount to a constitutional violation. Additionally, as previously stated, denial of a request to go to an outside hospital is a disagreement over specific treatment and does not amount to a constitutional violation. *See Munoz*, 2018 WL 1626170, at *6 n.5 (S.D.N.Y. Mar. 30, 2018) (holding that plaintiff failed to state claim where physician denied request to transfer to outside hospital and plaintiff later received x-ray diagnosis of a dislocated shoulder and three-to-four broken ribs); *Sereika*, 411 F. Supp. 2d at 407–08 (S.D.N.Y. 2006) (holding that plaintiff's allegation that he was not referred to a specialist was a "mere disagreement in treatment" and did not state a claim for deliberate indifference).

Accordingly, Plaintiff's Eighth Amendment claim against Dr. Bentivegna must be dismissed.

## III. Qualified Immunity Defense

Defendant argues in the alternative that Plaintiff's Eighth Amendment claim must be dismissed based on the defense of qualified immunity. Because the Court has dismissed the Eighth Amendment claim, it need not address Dr. Bentivegna's qualified immunity defense.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. Plaintiff's Eighth Amendment claims against Dr. Bentivegna are dismissed with prejudice. Accordingly, the Clerk of the Court is respectfully directed to terminate Defendant's Motion to Dismiss at ECF No. 49 and terminate Dr. Bentivegna as a Defendant in this action. The Clerk of the Court is further

directed to mail a copy of this Opinion to pro se Plaintiff at the address listed on ECF and to show service on the docket.

The only remaining claim in this case is against Defendant CO Sawyer, who answered the Amended Complaint on March 6, 2020. (ECF No. 42.) The remaining parties—Defendant CO Sawyer, and Plaintiff—are directed to confer and to jointly complete and file the attached Scheduling Order on or before July 21, 2021. If, due to Plaintiff's incarceration, it is not possible for the parties to confer, then CO Sawyer and Plaintiff are each directed to file a proposed case management plan on or before July 21, 2021. After review and approval of the Scheduling Order, the Court will issue an Order of Reference to Magistrate Judge Paul E. Davison for general pretrial purposes. The parties are directed to contact Judge Davison within seven (7) business days of the date of the Order of Reference to schedule a conference.

Dated: June 21, 2021
       White Plains, NY

SO ORDERED:

_____
HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT  Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

                                             Plaintiff(s),      **CIVIL CASE DISCOVERY PLAN**
                                                                       **AND SCHEDULING ORDER**
       - against -

                                               Defendant(s).    _____ CV _____ (NSR)

------------------------------------------------------------x

       This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge